UNITED STATES COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>    v.<br><br>CLEAN HARBORS, INC., CLEAN<br>HARBORS BATON ROUGE, LLC and<br>BATON ROUGE DISPOSAL, LLC,<br><br>    *Defendants*. | Civ. No. _____ |

## **COMPLAINT**

Plaintiff the United States of America, by the authority of the Attorney General and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### I.    **NATURE OF ACTION**

1.    This is a civil action against Defendants Clean Harbors, Inc., Clean Harbors Baton Rouge, LLC, and Baton Rouge Disposal, LLC ("Defendants"), pursuant to Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and 9613.

2.    Pursuant to Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), the United States seeks performance of remedial action and recovery of response costs that have been and will be incurred through conducting response activities in connection with the release or threat of release of hazardous substances at the Devil's Swamp Lake Superfund Site in East Baton Rouge Parish, Louisiana ("Site"). In addition, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States seeks a judgment declaring that the

Defendants are liable for any future response costs to be incurred because of releases or threatened releases of hazardous substances at or in connection with the Site.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action and over Defendants, pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606(a), 9607, and 9613(b). This Court also has personal jurisdiction over Defendants.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), and 42 U.S.C. § 9613(b), because the Site is located, the claims arose, and the threatened and actual releases of hazardous substances that gave rise to the claims occurred, within this judicial district.

## III.      DEFENDANTS

5.      Defendant Clean Harbors, Inc. is a Massachusetts Corporation doing business in the State of Louisiana and is a successor to Rollins Environmental Services, Inc. ("Rollins"), which owned and operated a hazardous waste disposal facility ("Rollins Facility") that was a source of hazardous substances that contaminated the Site. Clean Harbors, Inc. is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.      Defendant Clean Harbors Baton Rouge, LLC ("Clean Harbors BR") is a Delaware Corporation doing business in the State of Louisiana and is a subsidiary of Clean Harbors, Inc. Clean Harbors BR owns and operates the Rollins Facility and is a successor to Rollins with respect to the Rollins Facility. Clean Harbors BR is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

7.      Baton Rouge Disposal, LLC ("BR Disposal") is a Delaware corporation doing business in the State of Louisiana and is a subsidiary of Clean Harbors, Inc. BR Disposal owns

the Rollins Facility, including the real property on which it sits, and is a successor to Rollins with respect to the Rollins Facility. BR Disposal also owns land that underlies part of Devil's Swamp Lake and is part of the Site. BR Disposal is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## IV.    STATUTORY BACKGROUND

8.    Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), authorizes EPA to remove or arrange for removal of, and provide remedial action relating to, any release or threatened release of any hazardous substance, or to take any other response measure that EPA deems necessary to protect the public health or welfare or the environment.

9.    Section 104(b)(1) of CERCLA, 42 U.S.C. § 9604(b)(1), authorizes the President to gather information he deems necessary or appropriate to identify the existence and extent of the release or threatened release of any hazardous substance, and the extent of danger to the public health or welfare or to the environment. In addition, the President may undertake actions he deems necessary or appropriate to plan and direct response actions, to recover response costs, and to enforce CERCLA actions.

10.    Under Executive Order 12,580, *Superfund Implementation*, issued on January 23, 1987, and as authorized by Section 115 of CERCLA, 42 U.S.C. § 9615, the President has delegated his authority under Sections 104(a) and (b) of CERCLA, 42 U.S.C. § 9604(a) and (b), to the Administrator of EPA to arrange for the cleanup of hazardous waste or to conduct investigations and studies as necessary to determine the need for, and extent of, such a cleanup. With respect to the Site, this authority has been re-delegated to the Director of the Superfund Division, EPA Region 6. Under the same Executive Order, the President has delegated authority under Section 106 of CERCLA, 42 U.S.C. § 106, to the Administrator of EPA.

11.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

12.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section [i.e., 42 U.S.C. § 9607(b)] –

(1)  the owner or operator of a vessel or a facility, [and]

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . .

(4) . . . from which there is a release, or a threatened release, which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government. . . not inconsistent with the national contingency plan[.]

13.    The national contingency plan ("NCP") provides the "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." 42 U.S.C. § 9605(a). The NCP is codified at 40 C.F.R. Part 300.

14.    Section 107(a) of CERCLA, 42 U.S.C. § 9607, also provides that "[t]he amounts recoverable in an action under this Section shall include interest on the amounts recoverable under" subparagraph (A).

4

15.     Liability under Section 107(a) of CERCLA, 42 U.S.C. § 9607, for all costs incurred and to be incurred by the United States, is strict and joint and several.

16.     Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that, in any action for recovery of costs under Section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## V.     FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### THE SITE

17.     The Site is located in East Baton Rouge Parish, Louisiana, in Devil's Swamp.

18.     Devil's Swamp consists of an approximate 12-square-mile wetland in an industrialized area along the east bank floodplain of the Mississippi River.

19.     Devil's Swamp Lake is a man-made, crescent-shaped lake situated in the middle of Devil's Swamp. It is approximately 10 miles north of the city of Baton Rouge, Louisiana. Devil's Swamp Lake was constructed by dredging in 1973, with the dredged material used to reinforce a nearby levee. Devil's Swamp Lake covers approximately 39 acres, is approximately 0.8 miles long, and is 340 feet wide at its widest point.

20.     Prior to the 1950s, the areas surrounding Devil's Swamp consisted of agricultural farms, pasture, and some timberland. In the 1960s and 1970s, rapid development of the area resulted in construction of numerous industrial facilities, including the Rollins Facility.

21.     The Rollins Facility is northeast of, and adjacent to, the Site. Rollins owned and operated the Rollins Facility as a hazardous and non-hazardous waste treatment, storage, and disposal facility from the early 1970s to 1997.

22.    Beginning in the early 1970s, the Rollins Facility discharged treated process wastewater and stormwater, via two separate outfalls, into a drainage ditch that led into Devil's Swamp Lake. The approximately 3,600-foot-long ditch begins near the southwest corner of the Rollins Facility and discharges into the northeastern portion of Devil's Swamp Lake.

23.    The Site consists of contaminated sediments within Devil's Swamp Lake, a portion of Devil's Swamp adjoining the lake, and associated wetlands. The Site includes a portion of the drainage ditch between the Rollins Facility and Devil's Swamp Lake.

24.    In 1991, Rollins completed a Resource Conservation and Recovery Act Facility Investigation and Corrective Action Plan at the Rollins Facility, including part of the drainage ditch within the Rollins Facility. The soil and sediment within that portion of the drainage ditch was addressed under a 2003 Administrative Order on Consent and a Hazardous Waste Permit for the Rollins Facility. Remediation of that portion of the drainage ditch was completed in 2014, and therefore the portion of the ditch within the Rollins Facility is not part of the Site.

25.    In 1993, a treated discharge line was installed directly into the Mississippi River. While the outfall for wastewater no longer discharges through the drainage ditch, the outfall for stormwater continues to discharge to Devil's Swamp Lake from the Rollins Facility through the drainage ditch.

## CONTAMINATION AT THE SITE

26.    The primary hazardous substances present at the Site are polychlorinated biphenyls ("PCBs"). PCBs are chemical compounds that EPA and has classified as probable carcinogens and has listed as "hazardous substances" under CERCLA, 40 C.F.R. § 302.4.

27.    As part of Rollins' business operations at the Rollins Facility, it stored and disposed of hazardous substances, including PCBs. Hazardous substances were discharged via

6

the drainage ditch beginning on the Rollins Facility to surface water and sediment, and subsequently to other areas and environmental media at the Site by various transport mechanisms, including sediment resuspension and surface water transport. Discharge of hazardous substances from the Rollins Facility resulted in contamination of surface water, soil, sediment, and biota in Devil's Swamp Lake.

28.    In the 1970s, EPA documented PCBs in the effluent of the Rollins Facility. The historical discharge of PCBs from the Rollins Facility has been determined to be the primary source of hazardous substances at the Site.

29.    PCBs pose a particular threat to animals and other organisms in aquatic systems, such as lakes, because they are persistent (meaning they resist degradation), bioaccumulative (meaning their concentrations in body tissue increase over time), and toxic. The manufacture of PCBs was stopped in the United States in 1977 due to evidence that they build up in the environment and can cause harmful health effects.

30.    In 2015, the Louisiana Department of Health & Hospitals, the Louisiana Department of Environmental Quality, and the Louisiana Department of Wildlife & Fisheries issued a fish consumption advisory based in part on elevated PCB concentration found in fish in Devil's Swamp Lake. In the advisory, the Louisiana agencies advised the public not to eat fish or crawfish from the area, and additionally advised that, due to historic water and sediment contamination, the public not swim or participate in primary water contact sports in the area. This advisory superseded a similar advisory issued in 1993 that did not include crawfish.

**DEFENDANTS' CONNECTIONS TO THE SITE**

31.    From the 1970s until 2002, the Rollins Facility was owned and operated in succession by Rollins, Laidlaw Environmental Services (Baton Rouge), and Safety-Kleen (Baton Rouge). Safety-Kleen (Baton Rouge), was a subsidiary of Safety-Kleen Services, Inc.

32.    In 2002, Clean Harbors, Inc. acquired certain assets of Safety-Kleen Services, Inc.'s Chemical Services Division through an acquisition agreement ("Acquisition Agreement"). Properties listed on an "Owned Real Property" schedule (Schedule 1.1(b)(vi)(A) of the Acquisition Agreement) were among the acquired assets. The address of the Rollins Facility was listed on the Owned Real Property schedule.

33.    Under the terms of that Acquisition Agreement, the "Purchaser" and "Purchasing Subs" "assume[d] from the Seller and the Selling Subs . . . liabilities and obligations arising under Environmental Laws" relating to activities conducted at and the migration of materials from properties listed on the Owned Real Property schedule, including the Rollins Facility.

34.    In the Acquisition Agreement, Clean Harbors, Inc. was defined as "Purchaser" and Safety-Kleen Services, Inc. was defined as "Seller." Both Clean Harbors BR and BR Disposal met the Acquisition Agreement's definition of "Purchasing Subs."

35.    Clean Harbors, Inc., Clean Harbors BR, and BR Disposal are each a person, or successor to a person, who at the time of disposal of a hazardous substance owned and/or operated a facility at which hazardous substances were disposed and from which there were releases or threatened releases of hazardous substances, which caused the incurrence of response costs within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

36.     Clean Harbors BR currently owns and operates the Rollins Facility, and BR Disposal currently owns the Rollins Facility, including the property on which it sits, and currently owns a portion of the Site.

37.     Clean Harbors BR and BR Disposal are each a person who is a current owner and/or operator of a facility from which there were releases of hazardous substances, or threatened releases of hazardous substances, which caused the incurrence of response costs, within the meaning of CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

## RESPONSE ACTIONS AT THE SITE

38.     EPA has performed various response actions at the Site since the 1980s. In 1986 EPA performed a preliminary assessment and site inspection; in 1992, EPA performed a secondary preliminary assessment; and in 1993, EPA performed an expanded site inspection. In 1995, EPA performed an ecological risk assessment for Devil's Swamp Lake; in 1997, EPA performed risk assessment sampling at Devil's Swamp Lake; and in 1999, EPA performed a human health risk assessment and ecological risk assessment for Devil's Swamp.

39.     In 2004, EPA proposed the Site for listing on the National Priorities List.

40.     In 2010, under a Unilateral Administrative Order, Defendants began a remedial investigation and feasibility study for the Site. In 2015, Defendants finalized the remedial investigation report, and in 2018, Defendants finalized the feasibility study report.

41.     In 2019, EPA finalized a Proposed Plan, which identified a preferred alternative for remedial action at the Site. EPA published notice of the Proposed Plan and provided the public an opportunity to submit comments and participate in a public meeting.

42.     On August 6, 2020, EPA issued a Record of Decision ("ROD") selecting a remedy for the Site. In the ROD, EPA concluded that that data showed unacceptable risks for

human consumption of fish caught in the lake due to PCB contamination. EPA stated that, in order to reduce PCB levels in fish, it was necessary to reduce PCB levels in the sediment.

43.    The ROD set forth a Selected Remedy with the following components: 1) installation of a sediment cap in the on-Site portion of the drainage ditch; 2) performance of enhanced monitored natural recovery in soil management areas; and 3) implementation and maintenance of informational devices and institutional controls.

44.    EPA determined in the ROD that the selected response action was necessary to protect human health and the environment from actual or threatened releases of hazardous substances into the environment.

45.    EPA has incurred, and will continue to incur, response costs in connection with the Site for response actions not inconsistent with the NCP.

## FIRST CLAIM FOR RELIEF

### (Response Costs)

46.    Paragraphs 1-45 are re-alleged and incorporated herein by reference.

47.    The Rollins Facility, including the real property on which the former hazardous waste disposal facility sits, is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), because it is a "building, structure, . . . site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located[.]" There have been "releases" or "threatened releases" of "hazardous substances" at or from this "facility" within the meaning of CERCLA Sections 101(9), 101(14), 101(22), and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

48.    The Site is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), because it is a "site or area where a hazardous

substance has been deposited, stored, disposed of, or placed, or otherwise come to be located[.]" There have been "releases" or "threatened releases" of "hazardous substances" at or from this "facility" within the meaning of CERCLA Sections 101(9), 101(14), 101(22), and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

49.   PCBs were "released" into the environment at the Rollins Facility and at the Site from the Rollins Facility within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a).

50.   PCBs are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and the regulations referenced therein, 40 C.F.R. § 302.4.

51.   Defendants own or operate, or Defendants or their predecessors in interest owned or operated at the time of disposal, part of the Site and/or the Rollins Facility, at which hazardous substances were disposed and from which hazardous substances were disposed and released to the Site. There have been "releases" or "threatened releases," within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances to and at the Site.

48.   Defendants are within the class of persons described in Section 107(a)(1) and (a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (a)(2), because, currently and at the time of disposal, Defendants or their predecessors in interest owned or operated a facility from which there was a release or threatened release of a hazardous substance.

49.   As a result of the disposal and releases, or threatened releases, of hazardous substances at or from the Rollins Facility and the Site, the United States has undertaken response actions, and may undertake response actions in the future, at the Site to protect the public health, welfare, or the environment within the meaning of Sections 104 and 107 of CERCLA, 42 U.S.C. §§ 9604, 9607.

50.     The United States' response costs include, but are not limited to, the costs associated with monitoring, assessing, and evaluating the releases of hazardous substances at the Site, costs of enforcement-related activities, and costs of oversight of Defendants' response activities.

51.     The response costs incurred by the United States in connection with the Site are not inconsistent with the NCP within the meaning of CERCLA §§ 101(31) and 107(a)(4)(A), 42 U.S.C. §§ 9601(31) and 9607(a)(4)(A).

52.     As a result of responding to the releases or threatened releases of hazardous substances at the Rollins Facility and the Site, the United States, through the date of this Complaint, has incurred over $2.5 million in unreimbursed costs.

53.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are jointly and severally liable to the United States for all response costs incurred by the United States in connection with its response actions at the Site, including enforcement costs and interest on all such costs.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief—Performance of Response Actions)

54.     Paragraphs 1-53 are re-alleged and incorporated by reference.

55.     EPA has determined that the remedy selected in Section 2.12 of the ROD is necessary to protect public health or welfare or the environment from actual or threatened releases of pollutants or contaminants from this site which may present an imminent and substantial endangerment to public health or welfare.

56.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Court should issue an injunction requiring Defendants to undertake the remedial action identified in

Section 2.12 of the ROD, which action EPA determined to be necessary to abate the danger or threat at or from the Site.

### THIRD CLAIM FOR RELIEF

#### (Declaratory Judgment)

57.     Paragraphs 1-56 are re-alleged and incorporated herein by reference.

58.     Because response work is ongoing, the United States will continue to incur response costs at or in connection with the Site in the future.

59.     Defendants are subject to a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), on liability for response costs that will be binding on any subsequent actions to recover further response costs.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

1.     Enter judgment, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of the United States against Defendants, jointly and severally, for response costs incurred by the United States, including prejudgment interest, in connection with the above-described response actions relating to the Site, and order Defendants to pay such costs and interest;

2.     Order Defendants to remedy conditions in connection with the release or threatened release of hazardous substances at the Site, including performing the remedy set forth in Section 2.12 of the ROD, pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a);

3.     Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding on any subsequent action or actions to recover further

13

response costs and that declares Defendants liable, jointly and severally, for all future response costs incurred by the United States in connection with the Site;

4.      Award the United States its costs in this action; and

5.      Grant such other relief as the Court deems just and proper.


Respectfully Submitted,

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section


 s/ Laura F. Smythe
Laura F. Smythe, NY Reg. No. 5326657
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC  20044-7611
Telephone: (202) 514-1113
Email: laura.smythe@usdoj.gov

RONALD C. GATHE, JR.
United States Attorney
Middle District of Louisiana


 s/ Davis Rhorer Jr.
Davis Rhorer Jr., LBN 37519
Assistant United States Attorney
United States Attorney's Office
777 Florida Street, Suite 208
Baton Rouge, LA 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: davis.rhorer@usdoj.gov

OF COUNSEL:

MATTHEW MILLER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, Texas 75270